BARBER, APPELLANT, *v.* CURRY, REGISTRAR, BUREAU OF MOTOR VEHICLES, APPELLEE.

[Cite as Barber v. Curry (1974), 40 Ohio App. 2d 346.]

(No. 73AP-417—Decided April 9, 1974.)

*Messrs. Gingher & Christensen* and *Mr. Bradley Hummel*, of counsel, for appellant.

*Mr. George C. Smith*, prosecuting attorney, *Mr. Miles C. Durfey, Mr. William B. Shimp* and *Mr. John T. Morrison*, legal intern, for appellee.

*Per Curiam.* This is an appeal by plaintiff from a judgment of the Franklin County Municipal Court, which found adversely to plaintiff and imposed the statutory suspension of driving rights pursuant to R. C. 4511.191, for a failure of plaintiff to submit to a chemical test.

Plaintiff raises two assignments of error as follows:

"I. The trial court erred in ordering a suspension of the appellant's driver's license based upon his alleged refusal to take the breathalyzer test, since the test was not offered within two hours of the time of the alleged violation.

"II. The trial court erred in ordering a suspension of the appellant's driver's license based upon his alleged refusal to take the breathalyzer test, since his injured and in-

toxicated condition rendered him incapable of refusing to take the test."

There is no question that plaintiff failed to take a chemical test, although requested. However, it is apparently conceded by all parties, and the trial court expressly found, that no chemical test was offered by the police officer involved until more than two hours (but less than three hours) after the time of the alleged violation of operating a motor vehicle while under the influence of alcohol. It also appears that plaintiff refused to submit to a chemi cal test because more than two hours had elapsed.

The implied consent law is set forth in R. C. 4511.191 (A) as follows:

"Any person who operates a motor vehicle upon the public highways in this state shall be deemed to have given consent to a chemical test or tests of his blood, breath, or urine for the purpose of determining the alcoholic content of his blood *if arrested for the offense of driving while under the influence of alcohol. * * *"* (Emphasis added.)

Thus, it is quite clear that the implied consent provision applies only when a person has been arrested for the offense of driving while under the influence of alcohol. Obviously, the purpose of the test must bear a reasonable relationship to the arrest for the offense of driving while under the influence of alcohol in order to constitute a test within the contemplation of this section. A person may withdraw his consent pursuant to R. C. 4511.191(D), which provides in pertinent part:

"If a person under arrest for the offense of driving a motor vehicle while under the influence of alcohol refuses upon the request of a police officer to submit to a chemical test designated by the law enforcement agency as provided in division (A) of this section, after first having been advised of the consequences of his refusal as provided in division (C) of this section, no chemical test shall be given * * *."

However, in the event of such refusal, the refusing person's driving rights are suspended for a period of six months.

R. C. 4511.191 and 4511.19 are *in pari materia*. The in-

348

terrelationship between the two sections is readily apparent from reading either or both. Furthermore, and most controlling, except for the first paragraph of R. C. 4511.19, the two sections are a part of a single act of the legislature—namely, Amended Substitute House Bill No. 380, enacted by the 107th General Assembly. That act was enacted for a single stated purpose: "to improve the state highway safety program." 132 Ohio Laws 2611. It is true that both this court, in *Hoban* v. *Rice* (1970), 22 Ohio App. 2d 130, and the Supreme Court in *Hoban* v. *Rice* (1971), 25 Ohio St. 2d 111, held that the proceedings under R. C. 4511.-191, being civil, are separate and independent of the proceedings, being criminal, under R. C. 4511.19. However, in that case, neither this court, nor the Supreme Court considered, or had before it, the issue of whether the two sections should be read *in pari materia*. Since they are part of the same legislative act enacted for the same stated purpose, proper construction requires that they be read together in order to ascertain legislative intent.

The basic issue involved in *Hoban* was whether a person was exempted from the suspension imposed by R. C. 4511.191 for a refusal to submit to a chemical test because he subsequently pleads guilty to the offense of operating a motor vehicle while under the influence of alcohol. The court merely held that such admission of guilt did not avoid the consequences of a refusal to submit to a test, following *State* v. *Starnes* (1970), 21 Ohio St. 2d 38, in which it had been indicated that R. C. 4511.191 is "intended for the protection of the travelling public." However, R. C. 4511.19 is similarly intended for the protection of the travelling public. *Mentor* v. *Giordano* (1967), 9 Ohio St. 2d 140. This purpose might be elaborated upon in that it would appear, by the enactment of R. C. 4511.191, the General Assembly intended to protect the travelling public by (1) discouraging persons from driving an automobile while under the influence of alcohol, (2) removing driving rights from persons so disposed to drunk driving that they refused to submit to a chemical test when arrested for that offense, and (3) providing a means of obtaining reliable evidence of whether a person is under the influence of alcohol. In fact, it would appear that the reasonableness and validity of implied con-

sent would necessarily be related to the third above-stated purpose.

Although no time limitation for a chemical test is specified in R. C. 4511.191, it is fundamental that such test be offered and refused within a reasonable time after the offense of driving while under the influence of alcohol. It would also seem fundamental that the reasonable time period is that period of time within which the chemical test will provide reliable evidence of whether the person so arrested was under the influence of alcohol at the time of his arrest for driving while under the influence of alcohol. No one would contend that a refusal to take a chemical test several days, or longer, after the time of the alleged offense, would constitute a refusal to take a test within the contemplation of R. C. 4511.191. Thus, the issue before us is as follows: when does the reasonable time within which a chemical test must be offered and refused expire before the consequences of R. C. 4511.191 can be imposed?

If, as contended by plaintiff, R. C. 4511.19 provides that a chemical test administered more than two hours after the alleged commission of the offense of driving while under the influence of alcohol would constitute neither competent, nor admissible evidence upon the issue of whether the person charged was under the influence of alcohol at the time alleged, the legislature would have answered this question for us. In other words, if, at the time the chemical test is first offered and refused, the results thereof would be neither competent, nor admissible evidence upon the issue of whether the person tested was under the influence of alcohol at the time of the alleged commission of the offense of driving while under the influence of alcohol, such refusal would not constitute a refusal bearing the consequences of suspension of driving rights imposed by R. C. 4511.191.

At first reading, *State* v. *Sickles* (1970), 25 Ohio App. 2d 1, *State* v. *Miracle* (1973), 33 Ohio App. 2d 289, and *In re Brooks* (1971), 27 Ohio St. 2d 66, would all give the impression of supporting plaintiff's position that the two-hour limitation provisions of R. C. 4511.19 preclude the admission into evidence of tests administered after the expiration of that period. However, these cases do not so hold

and do not require such a conclusion. Furthermore a careful reading of R. C. 4511.19 indicates that it does not impose an exclusionary rule with regard to chemical tests, regardless of when they are given.

The pertinent provision of R. C. 4511.19 is as follows:

"In any criminal prosecution for a violation of this section, or ordinance of any municipality relating to driving a vehicle while under the influence of alcohol, the court may admit evidence on the concentration of alcohol in the defendant's blood at the time of the alleged violation as shown by chemical analysis of the defendant's blood, urine, breath, or other bodily substance withdrawn within two hours of the time of such alleged violation. * * *"

It will be noted that the provision does not state, either expressly or by necessary implication, that the results of a test are admissible only if the test was administered within the two-hour period. The real purpose of the two-hour limitation becomes more apparent when one takes cognizance of the fact, as indicated above, that all of R. C. 4511.19, except the first paragraph thereof, was enacted, although it has been subsequently amended, by the same act under which R. C. 4511.191 was established. One of the important purposes behind this addition to R. C. 4511.19 was the creation of a certain presumption, to be made from the evidence admitted pursuant to the above-quoted provision. In other words, immediately following the above quotation, relative to the two-hour time limitation, the following was added:

"When a person submits to a blood test at the request of a police officer under section 4511.191 of the Revised Code, only a physician or a registered nurse shall withdraw blood for the purpose of determining the alcoholic content therein. This limitation does not apply to the taking of breath or urine specimens. Such bodily substance shall be analyzed in accordance with methods approved by the director of health by an individual possessing a valid permit issued by the director of health pursuant to section 3701.143 of the Revised Code. *Such evidence gives rise to the following*: [Then follows the presumptions.]" (Emphasis added.)

Accordingly, the two-hour time limitation set forth in R. C. 4511.19 relates not to the admissibility of chemical tests, when properly qualified, but, rather, as to when evidence of such test will give rise to the presumptions set forth in R. C. 4511.19. Accordingly, R. C. 4511.19 does not preclude the admissibility of evidence, otherwise properly qualified, of chemical tests administered subsequent to the two-hour time period set forth therein, but merely precludes evidence of a test not given within such time period from giving rise to the presumptions set forth in R. C. 4511.19.

Chemical tests, when properly qualified by evidence laying a foundation for their admission, were admitted into evidence prior to the adoption of R. C. 4511.19. See *State* v. *Ezoto* (1961), 116 Ohio App. 1; *Mentor* v. *Giordano, supra.* At page 146 of the opinion in *Mentor,* it is stated:

"Chronology is an important element in 'drunken driving' cases. A relationship must be established between the time there was evidence to show the influence of intoxicants and the time of operating a vehicle. * * *"

This court similarly held in *City of Columbus* v. *Samuels* (1960), 112 Ohio App. 28, that a chemical test taken an hour and a half after an arrest was insufficient as a matter of law to prove that an accused was operating an automobile while under the influence of alcohol in the absence of evidence as to the scientific interpretation of the results of the chemical test.

R. C. 4511.19 obviates both the problem of chronology and the problem of interpretation where the chemical test is administered within two hours after the time of the alleged offense. However, it does not preclude the admission into evidence of chemical tests given subsequently if, as required prior to the enactment of R. C. 4511.19, there is evidence sufficient to establish both the chronology and the interpretation. In other words, if there is scientific evidence as to the relationship between the results of the test administered more than two hours after the time of the alleged offense, and the condition of the accused at the time of the alleged offense, the results of the test would be admissible into evidence.

In view thereof, there would be a basis under R. C. 4511.191 for administering a chemical test subsequent to the expiration of the two-hour period set forth in R. C. 4511.19.

The burden is upon the person seeking to avoid the consequences of his refusal to prove that the chemical test was first offered and refused at a time when the results thereof would not constitute competent or probative evidence of whether the person refusing was under the influence of alcohol at the time of the alleged commission of the offense. There is no such evidence in the record herein. Plaintiff has not sustained his burden of proof upon that issue. Accordingly, the first assignment of error is not well taken.

As to the second assignment of error, the trial court expressly found that plaintiff was not incapable of refusing to take the chemical test. This finding is supported by the evidence. Plaintiff testified that he had no recollection of being advised of the consequences of a refusal to take the chemical test, but remembered refusing to do so because two hours had elapsed.

Furthermore, R. C. 4511.191(B) expressly provides that a person "in a condition rendering him incapable of refusal, shall be deemed not to have withdrawn consent." However, plaintiff's testimony would indicate he was capable of refusal and did, in fact, refuse.

As to plaintiff's understanding of the consequences of such refusal, it is not necessary that it be shown that plaintiff subjectively understood the consequences of his refusal. It is only required that he be shown and read the prescribed form advising him of the consequences of a refusal to take the chemical test. *Hoban* v. *Rice* (1971), 25 Ohio St. 2d 112. This, the record indicates, was done. The second assignment of error is not well taken.

For the foregoing reasons, both assignments of error are overruled, and the judgment of the Franklin County Municipal Court is affirmed.

*Judgment affirmed.*

TROOP, P. J., STRAUSBAUGH and WHITESIDE, JJ., concur.