The State of Ohio, Appellee, *v.* Hernandez, Appellant.

(No. WD-77-58—Decided July 7, 1978.)

*Mr. Gary L. Oden,* for appellant.
*Mr. Chester H. Marcin,* for appellee.

Connors, J.   From the final judgment finding defendant guilty of a violation of R. C. 2903.06(A) (aggravated vehicular homicide), and pursuant to Crim. R. 12(H), the defendant appeals the trial court's overruling of (1) his motion to suppress evidence of a urine specimen analysis and the analysis results as to alcohol content of the defendant's blood and ((2) his motion for a vacation of the "no contest" plea subsequent to the overruling of the motion to suppress.

Defendant's sole assignment of error is as follows:

"The court erred in overruling the appellant's motion to suppress evidence of a urine specimen analysis and analysis results as to alcohol content of the appellant's blood."

Both the defendant and the state agree on the statement of the facts. On August 8, 1977, a complaint was made by an officer of the Ohio State Highway Patrol against the defendant. The complaint charged that defendant had operated a motor vehicle recklessly and caused the death of one Kathleen Johnson, in violation of R. C. 2903.06(A).

A collision occurred between two automobiles on August 7, 1977, at 1:45 a.m., at the intersection of U. S. route 23 and state route 105 in Wood County. One automobile involved in the above collision was driven by Dolly Arnold. The other was driven by the defendant. A passenger in the Arnold vehicle at the time of the collision was Kathleen Johnson, who was pronounced dead at the scene by the Wood County coroner.

Rolando Hernandez, the defendant, was transported from the scene of the collision by private ambulance to Fremont Memorial Hospital, Fremont, Ohio. A urine specimen was collected from the defendant at the hospital, at 4:03 a.m. on August 7, 1977, by state trooper D. W. Kohli. It is stipulated that the urine specimen was collected 2 hours and 18 minutes after the collision.

The urine specimen was transported to the Ohio State Highway Patrol Laboratory in Columbus for analysis. The specimen was analyzed by the laboratory to determine the concentration of alcohol, if any, in defendant's blood. As a result of such testing, it was shown that the concentration of alcohol in defendant's blood was .25, as expressed in numerical form as equivalent to grams of alcohol per one hundred millimeters of blood.

Based upon the investigation and the results of the chemical test, the defendant was indicted by the Wood County Grand Jury for a violation of R. C. 2903.06.

A motion to suppress the evidence came on to be heard before the trial court on November 2, 1977. Stipulations were filed on behalf of the defendant and the state. It was agreed that the urine specimen was taken from the defendant two hours and 18 minutes after the accident. It was further agreed that the results of the chemical test were expressed in numerical form as equivalent to grams of alcohol per one hundred millimeters of blood. It was further agreed that the prosecuting attorney would introduce an expert to testify as to the scientific correlation between the test results and the state of intoxication of the defendant at the time of the accident. It was further stipulated that the prosecution would not base its case upon any presumption set forth in R. C. 4511.19 (of being under the influence of alcohol), nor would the state request an instruction of law on any presumption.

Defendant in his memorandum, filed October 28, 1977, contends that the test results should not be admitted into evidence because of a failure to comply with regulation 3701-53-05 of the Director of Health, which provides, in part:

"3701-53-05. Collection and Handling of Blood and Urine Specimens.

"(a) All samples should be collected within two hours of the time of the alleged violation."

The above quoted regulation was adopted pursuant to a grant of authority set forth in R. C. 3701.143.

Defendant urges that the procedures set forth in the regulation referred to above are not limited to prosecutions for a violation of R. C. 4511.19 (driving under the influence). It is further urged that the two-hour requirement does not operate only to exclude the legal presumptions of intoxication.

Subsequent to his oral ruling on the motion to suppress, the trial court filed an excellent dissertation of his considered opinion in a memorandum decision. As is pointed out in that decision, we note that as authority for regulation 3701-53-05, Baldwin's Ohio Administrative Code cites not only R. C. 3701.143, but also 4511.19 and 4511.191. R. C. 3701.143 was only a part of a total legislative change passed by the General Assembly in House Bill 380 (effective 1-1-68), being Section 1 of such Bill. That Bill also created R. C. 4511.191 (implied consent law) and further amended Section 4511.19 by adding the presumptions arising from the results of chemical analyses. It is apparent that House Bill 380 was directed solely to driving under the influence, and the methods whereby the prosecution could avoid the requirement of introducing scientific evidence in every case to establish intoxication. The legislatively created presumptions set forth in R. C. 4511.19 were designed for that sole purpose.

The question then becomes whether Regulation 3701-53-05 is applicable to other criminal code provisions, particularly aggravated vehicular homicide, and the failure to take a specimen within the two-hour period.

It is clear that in the prosecution of driving under the influence, evidence as to the alcohol content of a specimen of body fluid is ordinarily admissible as competent and relevant to the issue of intoxication. See 7 American Jurisprudence 2d 875, Automobiles and Highway Traffic, Section 332. The courts of Ohio have established certain guidelines for the admissibility of evidence establishing intoxication. See *Mentor* v. *Giordano* (1967) 9 Ohio St. 2d 140; *State* v. *Miracle* (1973), 33 Ohio App. 2d 289; *State* v. *Hall* (1973), 39 Ohio App. 2d 87; *In re Brooks* (1971), 27 Ohio St. 2d 66; *Cincinnati* v. *Sand* (1975), 43 Ohio St. 2d 79.

These cases speak of the admissibility of test results and set forth the conditions precedent. The issue of the use of test

results, in the absence of statutory presumptions, as applied to a case of vehicular homicide, has not, as yet, been decided in this state.

However, in *Barber* v. *Curry* (1974), 40 Ohio App. 2d 346, the Franklin County Court of Appeals was faced with a refusal to take a breathalyzer test. The defendant at trial and on appeal argued that a refusal could be revoked anytime within the two-hour limit set forth in the statute. While that case involved the implied consent law, rather than driving while under the influence, that court was required to examine the impact of the two-hour provision on the collection of specimens. The court stated, at 349:

"At first reading, *State* v. *Sickles* (1970), 25 Ohio App. 2d 1, *State* v. *Miracle* (1973), 33 Ohio App. 2d 289, and *In re Brooks* (1971), 27 Ohio St. 2d 66, would all give the impression of supporting plaintiff's position that the two-hour limitation provisions of R. C. 4511.19 preclude the admission into evidence of tests administered after the expiration of that period. However, these cases do not so hold and do not require such a conclusion. Furthermore a careful reading of R. C. 4511.19 indicates that it does not impose an exclusionary rule with regard to chemical tests, regardless of when they are given."

The court based the above holding on an examination of the purposes behind the addition of the presumption to R. C. 4511.19. It went on to state, at 351:

"Accordingly, the two-hour time limitation set forth in R. C. 4511.19 relates not to the admissibility of chemical tests, when properly qualified, but, rather, as to when evidence of such test will give rise to the presumptions set forth in R. C. 4511.19. Accordingly, R. C. 4511.19 does not preclude the admissibility of evidence, otherwise properly qualified, of chemical tests administered subsequent to the two-hour time period set forth therein, but merely precludes evidence of a test not given within such time period from giving rise to the presumptions set forth in R. C. 4511.19.

"Chemical tests, when properly qualified by evidence laying a foundation for their admission, were admitted into evidence prior to the adoption of R. C. 4511.19. See *State* v. *Ezoto* (1961), 116 Ohio App. 1; *Mentor* v. *Giordano, supra.* At page 146 of the opinion in *Mentor,* it is stated:

" 'Chronology is an important element in "drunken driving" cases. A relationship must be established between the time there was evidence to show the influence of intoxicants and the time of operating a vehicle.***' "

A motion to certify the record to the Ohio Supreme Court was overruled in the *Barber* case on October 4, 1974.

We recognize that penal statutes are to be strictly construed against the state and in favor of the accused. See, generally, 15 Ohio Jurisprudence 2d 272, Criminal Law, Section 16. However, one must start with the premise that all relevant and probative evidence is admissible unless otherwise shown to be inadmissible. See generally: 21 Ohio Jurisprudence 2d 196, Evidence, Section 184.

Defendant does not argue or does not raise the federal constitutional guarantees against unlawful search and seizure, self-incrimination, or due process of law. See *Schmerber* v. *California* (1966), 384 U. S. 757. No constitutional violation was argued.

Stipulations were entered into as indicated below:

1. The urine sample to determine the concentration of alcohol in the blood was properly taken by a qualified expert.

2. The prosecuting attorney of Wood County would offer into evidence testimony and, or, exhibits at trial as to the method and technique employed for the collection and the analysis of the urine specimen, and the results of further analysis as to any concentration of alcohol in defendant's blood.

3. The attorney for the defendant would object to any attempt to offer into evidence any testimony and, or, exhibits at trial as to the method and technique employed for the collection and analysis of the urine specimen and the result of such analysis, as to the alleged concentration of alcohol in defendant's blood.

4. The prosecution would, at trial, introduce an expert who would testify as to the scientific correlation between the test results and the percent of alcohol in the blood which would indicate the intoxication of the defendant.

5. The prosecution, at trial, would not request an instruction on presumptions and no evidence would be introduced by the prosecution at trial regarding the presumption in R. C. 4511.19.

In such a posture, the motion to suppress came on for a hearing on the briefs submitted by counsel and was denied by the trial court.

In summation, defendant's sole argument of error is that the urine specimen was taken beyond the two-hour limit set forth in regulation 3701-53-05 of the Director of Health.

We hold that the results of the urinalysis test establishing the alcohol content of a defendant's blood is admissible even though the sample was withdrawn eighteen minutes beyond the two-hour time limit established by the Ohio Department of Health regulations. With the stipulations agreed to and set forth above, the proof of the amount of alcohol in the defendant's blood was merely an incidental factor of evidence and not an element of the offense. The case does not involve a prosecution for driving while under the influence of alcohol and no attempt to apply the presumptions set forth in R. C. 4511.19 was involved.

We further find that the test, as conducted, can be qualified under generally accepted rules of evidence as having a scientific basis in fact and generally recognized by courts of law; therefore, it was admissible in evidence, independent of health department regulations specifically dealing with driving while under the influence cases.

The decision to admit evidence of the alcohol content of the defendant's blood made by the Wood County Court of Common Pleas was correct and it is hereby sustained. Defendant's sole assignment of error is found not well taken.

An examination of the record indicates that once the motion to suppress evidence was overruled, the defendant entered a plea of "no contest," was found guilty of the offense charged and was sentenced. We find no error in the procedure of the court in accepting the "no contest" plea and the decision of the trial court is affirmed.

*Judgment affirmed.*

BROWN AND WILEY, JJ., concur.

WILEY, J., retired, was assigned to active duty under authority of Section 6(C), Article IV, Constitution.