**MURRAY CITY, Plaintiff and Respondent,**

v.

**Dan F. HALL, Defendant and Appellant.**

No. 17329.

Supreme Court of Utah.

April 13, 1983.

Herschel P. Bullen, West Valley City, for defendant and appellant.

Randy Hart, Murray, William R. Hyde, Salt Lake City, for plaintiff and respondent.

DURHAM, Justice:

The appellant Dan F. Hall appeals his conviction under Murray City Code § 18–115.1, which provides that it is unlawful for any person with a blood alcohol content of .10 percent or greater to drive or be in actual physical control of any vehicle. This Court has jurisdiction pursuant to U.C.A., 1953, § 78–3–5 (Supp.1981). We reverse the conviction and remand the case for a new trial.

This appeal is before this Court on an agreed statement of the facts which is as follows:

Officer Huggard, Murray City Police Department, was the prosecution's sole witness. He testified that he stopped a vehicle on Vine Street in Murray, concededly with adequate probable cause on the 9th day of September, 1979, in the early morning hours. Officer Huggard further testified that the arrestee identified himself by driver's license as Dan Frederick Hall and that he was the sole occupant and driver of the pickup truck which he stopped.

Officer Huggard indicated at trial that the arrestee exhibited objective indications of being under the influence of alcohol upon observation and administration of field sobriety tests. For this reason he requested and the arrestee consented to

the administration of a breathalizer [sic] test. The time of the stop and arrest was 2:25 A.M. and the breathalizer [sic] was administered at 3:32 A.M.

The result of the breathalizer [sic] is in evidence having been received by the Court upon testimony of Officer Huggard that he attended a three day course in the operation of the breathalizer [sic] plus a one day refresher and that he followed the operational checklist and that the arrestee had taken nothing into his mouth for over 20 minutes prior to administering the test. No testimony was elicited with respect to the accuracy of the machine or the trustworthiness of the chemicals used. The Court based its decision upon 41–6–44.3 Utah Code Annotated and allowed the results of the breath test into evidence over objection of counsel.

. . . .

Officer Huggard further testified that he could not identify the individual charged and in court at the time of trial as the person arrested on that night in September. The record did, however, establish that the individual in court was in fact one Dan Frederick Hall.

Officer Huggard further testified that he based his decision to charge § 115.1 i.e., .10 higher rather than D.U.I. on no particular reason at all and that the decision to charge was entirely arbitrary.

. . . .

The defendant did not testify and the defense rested without calling witnesses.

Despite objections by the appellant, the trial court found the appellant guilty of violating § 18–115.1 of the Murray City Code. On appeal, the appellant asserts several points of error, advancing essentially the same objections he raised at trial. First, the appellant contends that § 18–115.1, as well as the companion § 18–115, are unconstitutional in that the arbitrary application of § 18–115.1 to the appellant denied him equal protection of the laws

guaranteed by the U.S. and Utah Constitutions. *See* U.S. Const. amend. 14; Utah Const. art. I, § 24. Second, the appellant contends that U.C.A., 1953, § 41–6–44.3 permits the introduction of evidence that is inadmissible hearsay, and is unconstitutional because it permits evidence to be introduced at trial in violation of the appellant's right to confront the witnesses against him. *See* U.S. Const. amend. 6; Utah Const. art. I, § 12. Finally, the appellant claims that the trial court erred in denying the appellant's Motion to Dismiss based on the prosecution's failure to prove that the appellant was the perpetrator of the crime charged. The appellant contends that that error constitutes a denial of due process of law as guaranteed by the U.S. and Utah Constitutions. *See* U.S. Const. amends. 5 & 14; Utah Const. art. 1, § 7.

I.

The appellant's first point of error focuses on two provisions of the Murray City Code, namely, §§ 18–115 & 18–115.1, which were adopted on May 8, 1979. Section 18–115.1(a) adopts verbatim the language of U.C.A., 1953, § 41–6–44.2(a) (Supp.1973) and provides as follows:

It is unlawful and punishable as provided in subsection (b) of this section for any person with a blood alcohol content of .10 percent or greater, by weight, to drive or be in actual physical control of any vehicle within this city.

The pertinent portions of § 18–115 also adopt verbatim the language of U.C.A., 1953, § 41–6–44(a) & (b) (1970)[1] and provides as follows:

(a) It is unlawful and punishable as provided in subsection (d) of this section for any person who is under the influence of intoxicating liquor to drive or be in actual physical control of any vehicle within this city.

(b) In any criminal prosecution for a violation of subsection (a) of this section

---

1. For purposes of this section, unless otherwise specified, we refer to the Utah statutes that formed the basis for the Murray City Code §§ 18 -115 & 18- 115.1. For the current version of these statutes see U.C.A., 1953, § 41-6-44.-2(a) (Special Supp.1982) and U.C.A., 1953, § 41–6–44(a) & (b) (Interim Supp.1982).

relating to driving a vehicle while under the influence of intoxicating liquor, ... the amount of alcohol in the person's blood, breath or other bodily substance shall give rise to the following presumptions:

(1) If there was at that time 0.05 percent or less by weight of alcohol in the person's blood, it shall be presumed that the person was not under the influence of intoxicating liquor;

(2) If there was at that time in excess of 0.05 percent but less than 0.08 percent by weight of alcohol in the person's blood, such fact shall not give rise to any presumption that the person was or was not under the influence of intoxicating liquor, but such fact may be considered with other competent evidence in determining whether the person was under the influence of intoxicating liquor;

(3) If there was at the time 0.08 percent or more by weight of alcohol in the person's blood, it shall be presumed that the person was under the influence of intoxicating liquor;

(4) The foregoing provisions of this division shall not be construed as limiting the introduction of any other competent evidence bearing upon the question whether or not the person was under the influence of intoxicating liquor.

The appellant argues that even though § 18–115 and § 18–115.1 are aimed at the same conduct, there are no criteria or guidelines governing the decision to prosecute under one section rather than the other. The appellant points out that under § 18–115 one may avoid a conviction by rebutting the presumption of being under the influence, whereas under § 18–115.1 the presumption is irrebuttable. As a result, the appellant contends that the Murray City ordinances are unconstitutional as a denial of equal protection of the laws because they permit arbitrary, capricious and irrational distinctions between defendants.

 The general rule regarding judicial interpretation of municipal ordinances has been set forth as follows:

Ordinances are to be construed in the light of, and in harmony with, applicable provisions of charter, state law, constitution, and public policy. A particular ordinance is to be construed with reference to the grant of power, in charter or statute, to enact it. Moreover, an ordinance enacted pursuant to a statute should be construed by reading it with the statute, and if the language of both is in substance alike the presumption is indulged that the ordinance was designed to follow the statute. Indeed, an ordinance passed by virtue of a statute fixing the time and manner of a governmental action, e.g., an election, has the same power and effect and is to be interpreted as part of the statute itself. Where an ordinance follows the wording of a statute authorizing the ordinance, the court need only determine the proper interpretation of the statute.

6 E. McQuillin, *The Law of Municipal Corporations* § 20.41, at 102 (3d ed. 1980). The Utah Legislature has specifically authorized local authorities to enact ordinances consistent with §§ 41–6–44 & 41–6–44.2. *See* U.C.A., 1953, § 41–6–43. Because the Murray City Code §§ 18–115(a) & (b) and 18–115.1(a) adopt verbatim the language of the Utah statutes §§ 41–6–44(a) & (b) and 41–6–44.2(a), "the presumption is indulged that the ordinance was designed to follow the statute.... [and] the court need only determine the proper interpretation of the statute." *See* 6 E. McQuillin, *supra*, § 20.41, at 102.

 In construing legislative enactments or municipal ordinances, the primary responsibility of this Court is to give effect to the Legislature's underlying intent. *See, e.g., West Jordan v. Morrison*, Utah, 656 P.2d 445 (1982). It is also a well-established rule of statutory construction that statutes and ordinances

are endowed with a strong presumption of validity; and that they should not be declared unconstitutional if there is any reasonable basis upon which they can be found to come within the constitutional frame work [sic] ....

*Greaves v. State,* Utah, 528 P.2d 805, 807 (1974) (citations omitted). *See also Call v. West Jordan,* Utah, 614 P.2d 1257 (1980) (stating that an ordinance enacted within the scope of the legislative grant is entitled to a presumption of constitutional validity).

Prior to 1973, Utah's statute regarding driving under the influence (hereinafter "DUI"), § 41–6–44, set forth a scale of shifting presumptions of "being under the influence," based on one's blood alcohol content (hereinafter "BAC"). If a person's BAC was 0.05 percent or less, it was presumed that the person was not under the influence of alcohol. If the BAC was between 0.05 and 0.08 percent, no presumption arose. If, however, the person's BAC was 0.08 percent or greater, it was presumed that the person was under the influence of alcohol. *See* U.C.A., 1953, § 41–6–44 (1970). Under this statutory scheme, the presumptions were rebuttable. *See* U.C.A., 1953, § 41–6–44(b)(4) (1970) (providing for admission of other competent evidence on the question of whether a person is under the influence).

In 1973, the Utah Legislature amended § 41–6–44 by adding § 41–6–44.2, which makes it unlawful "for any person with a blood alcohol content of .10% or greater . . . to drive or be in actual physical control of any vehicle within this state." "Inherent in its language is the legislative determination and declaration that the stated blood content of .10 per cent [sic] of alcohol makes it dangerous for a person to operate or be in control of a vehicle." *Greaves v. State, supra,* at 807. Two elements are necessary to constitute a violation of § 41–6–44.2: "(1) a blood alcohol concentration of .10 per cent [sic], and (2) concurrent operation or actual physical control of any vehicle." *Id.* at 807–08. Under this section, the presumption is not rebuttable; it is conclusive. Thus, as the appellant contends, § 41–6–44.2 overlaps with § 41–6–44 in that both provisions apply to a person with a BAC of .10 percent or higher. However, under § 41–6–44, one may avoid a conviction by rebutting the presumption, whereas under § 41–6–44.2 the presumption is irrebuttable.

In construing these two statutes, we rely on another well-established rule of statutory construction, which provides:

> In terms of legislative intent, it is assumed that whenever the legislature enacts a provision it has in mind previous statutes relating to the same subject matter, wherefore it is held that in the absence of any express repeal or amendment therein, the new provision was enacted in accord with the legislative policy embodied in those prior statutes, and they all should be construed together.
>
> Provisions in an act which are omitted in another act relating to the same subject matter will be applied in a proceeding under the other act, when not inconsistent with its purposes. Prior statutes relating to the same subject matter are to be compared with the new provision; and if possible by reasonable construction, both are to be so construed that effect is given to every provision in all of them.
>
> Statutes in pari materia, although in apparent conflict, are so far as reasonably possible construed to be in harmony with each other. But if there is an irreconcilable conflict between the new provision and the prior statutes relating to the same subject matter, the new provision will control as it is the later expression of the legislature.

2A C. Sands, *Sutherland Statutory Construction* § 51.02, at 290 (4th ed. 1973). Sections 41–6–44 and 41–6–44.2 are *in pari materia* because they have the common purpose of eliminating from our public highways the dangers posed by intoxicated drivers. *See* 2A C. Sands, *supra,* §§ 51.01–51.03, at 287–313. Thus, these statutes should be construed with reference to each other and harmonized, if possible. *See* 2A C. Sands, *supra,* § 46.05, at 56–63, §§ 51.01–51.03, at 287–313. *See also, e.g., Rose v. State,* 168 Ind.App. 674, 345 N.E.2d 257 (1976); *Barber v. Curry,* 40 Ohio App.2d 346, 319 N.E.2d 367 (1974). We conclude that by enacting § 41–6–44.2, the more recent statute, the Utah Legislature intended to amend or qualify § 41–6–44, the earli-

er statute, to include the irrebuttable presumption at the upper end of the scale of "shifting" presumptions. *See* 2A C. Sands, *supra,* § 51.02, at 290. *See also Pryber v. Marriott Corp.,* 98 Mich.App. 50, 296 N.W.2d 597 (1980). Consequently, a BAC of .08 percent or greater and less than .10 percent gives rise to a rebuttable presumption of being under the influence, whereas a BAC of .10 percent or greater gives rise to a conclusive presumption of being under the influence.[2]

The discussions during the legislative floor debates on these statutory sections support our conclusion. During those debates, speakers referred to § 41–6–44 as giving rise to a rebuttable presumption of being under the influence of alcohol and § 41–6–44.2 as "per se under the influence." *See Driving While Intoxicated, Floor Debate Regarding H.B. No. 56,* 1973 General Session of the Utah Legislature. *See also Coxe v. State,* Del., 281 A.2d 606 (1971) (the Delaware Supreme Court confronted a similar statutory construction problem and arrived at the same conclusion).

 We therefore hold that, by enacting § 41–6–44.2, the Utah Legislature intended to amend Utah's DUI laws so that: (1) a BAC of 0.08 percent or greater but less than 0.10 percent gives rise to a rebuttable presumption that one is under the influence of alcohol and (2) a BAC of 0.10 percent or greater gives rise to a conclusive presumption that one is under the influence of alcohol. Furthermore, when Murray City adopted almost verbatim the Utah DUI statutes, "the presumption is indulged that the ordinance was designed to follow the statute." 6 E. McQuillin, *supra,* § 20.41, at 102. Based on our construction of the Utah statutes, §§ 41–6–44 & 41–6–44.2, and the Murray City counterparts, Murray City

Code §§ 18–115(a) & (b) and 18–115.1(a), the appellant was not denied equal protection of the laws. Therefore, the appellant's first point of error is without merit.

## II.

In the appellant's second claim of error, he contends that U.C.A., 1953, § 41–6–44.3 permits the introduction of evidence that is inadmissible hearsay, and is unconstitutional in that it permits the introduction of evidence in violation of his right of confrontation. *See* U.S. Const. amend. 6; Utah Const. art. I, § 12. We hold that § 41–6–44.3 is a valid exception to the hearsay rule and does not deny the appellant his right of confrontation. However, the mandates of the statute were not complied with in the present case, and his conviction must therefore be reversed.

Section 41–6–44.3 provides as follows:

(1) The commissioner of public safety shall establish standards for the administration and interpretation of chemical analysis of a person's breath including standards of training.

(2) In any action or proceeding in which it is material to prove that a person was driving or in actual physical control of a vehicle while under the influence of alcohol or driving with a blood alcohol .content of .10% or greater, documents offered as memoranda or records of acts, conditions or events to prove that the analysis and accuracy of the instrument were made pursuant to standards established in subsection (1) shall be admissible if:

(a) The judge finds that they were made in the regular course of the investigation at or about the time of the act, condition or event; and

(b) The source of information from which made and the method and circum-

---

**2.** Some states have enacted statutory schemes which provide for rebuttable presumptions and then, at a specified BAC, the presumption becomes conclusive. *See, e.g.,* Minn.Stat. § 169.-121 (1982); N.Y.Veh. & Traf.Law §§ 1192 & 1195 (McKinney Supp.1982). Other states have enacted a statutory scheme which merely provides a conclusive presumption at a speci-

fied BAC level. *See, e.g.,* Fla.Stat. § 316.193 (1981); Neb.Rev.Stat. § 39-.699.07 (Supp. 1982); N.C.Gen.Stat. § 20–138 (Supp.1981). *See generally* 3 R. Erwin, *Defense of Drunk Driving Cases: Criminal-Civil* §§ 33A.00 33A.01 (3d ed. 1982) (discussing and listing those jurisdictions with the "10% absolute or the illegal per se drunk driving laws").

stances of their preparation were such as to indicate their trustworthiness.

(3) If the judge finds that the standards established under subsection (1) and the provisions of subsection (2) have been met, there shall be a presumption that the test results are valid and further foundation for introduction of the evidence is unnecessary.

 Section 41–6–44.3 is merely a codification of the findings necessary to establish a proper foundation for the introduction of breathalyzer evidence. It is a legislative recognition of the universal acceptance of the reliability of such evidence. *Cf., e.g., People v. Gower,* 42 N.Y.2d 117, 397 N.Y.S.2d 368, 366 N.E.2d 69 (1977) (discussing the widespread acceptance of the reliability of the breathalyzer). The enactment of § 41–6–44.3 evinces an intent by the Legislature to relieve the State of Utah and other governmental entities of the financial burden of calling as a witness in every DUI case the public officer responsible for testing the accuracy of the breathalyzer equipment. The accuracy of the breathalyzer equipment depends on both the proper functioning of the breathalyzer machine itself and the proper compounding of chemicals in the ampoules. The regulations enacted by the Commissioner of Public Safety pursuant to § 41–6–44.3(1) require both a calibration of the machine and a testing of the ampoules. Thus, in place of the officer's testimony, § 41–6–44.3 permits the admission of affidavits regarding the maintenance of a specific breathalyzer as evidence of the proper functioning of that breathalyzer machine and the accuracy of the ampoules.[3] However, prior to the acceptance of those affidavits to establish a presumption of the validity of the test results, § 41–6–44.3 requires an affirmative finding by the trial court that (1) the calibration and testing for accuracy of the breathalyzer and the ampoules were performed in accordance with the standards established by the Commissioner of Public Safety, (2) the affidavits were prepared in the regular course of the public officer's duties, (3) that they were prepared contemporaneously with the act, condition or event, and (4) the "source of information from which made and the method and circumstances of their preparation were such as to indicate their trustworthiness." The record is devoid of any such findings.[4] In fact, the agreed statement of the facts states that "[n]o testimony was elicited with respect to the accuracy of the machine or the trustworthiness of the chemicals used." Moreover, the affidavits proffered as evidence in satisfaction of the requirements of § 41–6–44.3 are inadmissible because they show on their face that the affiants do not attest from their own personal knowledge.[5]

Consequently, the results of the breathalyzer tests were erroneously admitted because they lacked proper foundation. The conviction and judgment of the trial court are therefore vacated and set aside and the case is remanded for a new trial.

---

3. The appellant contends that § 41–6–44.3 is inapplicable to the ampoules. We disagree. The ampoules are such an integral part of the breathalyzer equipment that § 41–6–44.3 would serve no purpose if it did not encompass the ampoules.

4. The dissent claims that such findings are implicit or that the burden was on the defendant to take exception thereto. The defendant did object at the trial level to the admission of the breathalyzer results on the basis of lack of foundation. Furthermore, § 41–6–44.3(3) states that, before the court will presume the validity of the breathalyzer results, a judge must find compliance with subsections (1) and (2). We will not imply such findings, especially when the admission of evidence under § 41–6–44.3 intrudes upon an accused's constitutional right of confrontation. Moreover, the affidavits in this case pertaining to the testing of the breathalyzer on September 4th and 12th of 1979 were subscribed and sworn to on September 26, 1979, thereby showing that they were not prepared contemporaneously with the testing of the breathalyzer as required by the statute.

5. The dissent suggests that the affiants do attest from personal knowledge. The affidavits state that the breathalyzer "was properly checked according to the standards established by the Utah Department of Public Safety . . . ." Nowhere do the affiants state their basis for that statement. They do not state that they personally performed the testing. Absent such a statement, the affidavits are inadmissible.

On remand for a new trial, we are required to "pass upon and determine all questions of law involved in the case presented on appeal and necessary to the final determination of the case." Utah R.Civ.P. 76(a). We therefore address the appellant's claims regarding hearsay and his constitutional right of confrontation.

Section 41–6–44.3 appears to be patterned after the "Business Entries" exception to the hearsay rule. *See* Utah R.Evid. 63(13). *See generally* A. Polasky & F. Paulson, *Business Entries—From Common Law to the New Uniform Rules of Evidence (With a Glance at the Utah Development),* 4 Utah L.Rev. 327 (1955). Both § 41–6–44.3 and Rule 63(13) require that the document or memorandum be prepared in the regular course of the public officer's duties or business and that it be prepared contemporaneously with the act, condition or event. In addition, both require that the "source [or sources] of information from which made and the method and circumstances of their preparation were such as to indicate their trustworthiness." *See* U.C.A., 1953, § 41–6–44.3; Utah R.Evid. 63(13). Thus, § 41–6–44.3 appears to be a specific codification of the business entries exception to the hearsay rule.

■ We hold that, so long as there is compliance with the mandates of the statute, namely, contemporaneous preparation in accordance with established standards, in the regular course of the officer's duties, and indications of trustworthiness, the affidavits regarding the maintenance of a breathalyzer machine are admissible under § 41–6–44.3 as a valid statutory exception to the hearsay rule. As such, those affidavits establish a rebuttable presumption that the breathalyzer machine was functioning properly. *See* U.C.A., 1953, § 41–6–44.3(3). Our conclusion is supported by similar decisions in other jurisdictions. *See, e.g., Wester v. State,* Alaska, 528 P.2d 1179 (1974); *State v. Hudes,* 128 N.J.Super. 589, 321 A.2d 275 (1974); *State v. Walker,* 53 Ohio St.2d 192, 374 N.E.2d 132 (1978); *State v. Woodward,* 1 Or.App. 338, 462 P.2d 685 (1969).

■ The appellant also claims that § 41–6–44.3 permits the introduction of evidence in violation of his constitutional right of confrontation. Although we have decided that § 41–6–44.3 is a valid statutory exception to the hearsay rule, introduction of evidence under § 41–6–44.3 may still be in violation of an accused's constitutional right of confrontation. *See State v. Anderson,* Utah, 612 P.2d 778, 785 n. 31 (1980) (citing *California v. Green,* 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970)). With respect to the right of confrontation, this Court has stated:

Classically, the primary object of the constitutional right of confrontation is to prevent depositions and ex parte affidavits from being used against the accused at trial in lieu of a personal examination and cross-examination of the witness against him. When confrontation is available the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face-to-face with the jury in order that they may look at him and judge by his demeanor and the manner in which he gives his testimony whether he is worthy of belief. Encompassed in this right of confrontation is the procedural right of cross-examination and the recognition of certain procedural rights regarding the exclusion of extra judicial [sic] statements, similar to those found protected by evidentiary rules excluding hearsay evidence.

*State v. Anderson, supra,* at 785 (citations omitted). However, it is well recognized that the accused's right of confrontation is not absolute. *See, e.g., State v. Maestas,* Utah, 564 P.2d 1386 (1977). In certain instances, it must yield to legitimate governmental interests. *See, e.g., State v. Walker, supra,* 53 Ohio St.2d at 199, 374 N.E.2d at 136–37.

■ The enactment of § 41–6–44.3 manifests an intent by the Legislature to relieve the State of Utah and other governmental entities of the financial burden and inconvenience of calling as a witness in every DUI case the public officer responsible for testing the accuracy of the breatha-

lyzer machine and the ampoules. *See Stroupe v. Commonwealth,* 215 Va. 243, 207 S.E.2d 894 (1974). Such a concern is a legitimate governmental interest. Section 41–6–44.3, devised to further that interest, constitutes a very limited intrusion upon an accused's right of confrontation. The statute does not make the documents conclusive evidence that the breathalyzer was functioning properly. *See* U.C.A., 1953, § 41–6–44.3(3). In fact, if an accused feels that the machine was not functioning properly or wants to prove noncompliance with the standards established by the Commissioner of Public Safety, he/she can subpoena the public officer responsible for testing the accuracy of the breathalyzer and the ampoules. *See* U.C.A., 1953, § 77–35–14. *See also Stroupe v. Commonwealth, supra.* If the appellant wished to challenge the accuracy of the breathalyzer in this case, he could have subpoenaed or taken the deposition of the person who calibrated the breathalyzer and tested the ampoules in question. The appellant apparently chose not to do so.

Thus, given (1) the legitimate governmental interest in not having to produce in every DUI case the public officer responsible for testing the accuracy of the breathalyzer and the ampoules, and (2) the alternative means available to an accused to cross-examine and confront such a witness, we hold that § 41–6–44.3 does not violate the appellant's constitutional right of confrontation when all of its requirements are met. *See State v. Walker, supra. See also People v. Tenorio,* 197 Colo. 137, 590 P.2d 952 (1979) (stating that there is no violation of an accused's right of confrontation where the evidence is shown to be trustworthy and reliable). However, as previously discussed, the mandate of § 41–6–44.3 was not met in the present case. Therefore, the results of the breathalyzer test were erroneously admitted.

### III.

 The appellant's final assertion of error regarding the prosecution's failure to identify the appellant as being the perpe-

trator of the crime charged is not reviewable. It raises an issue of sufficiency of the evidence rather than a question of constitutional dimension. Therefore, the district court's decision thereon is final and is not reviewable by this Court. See *State v. Taylor,* Utah, 664 P.2d 439 (1983); Utah Const. art. VIII, § 9; U.C.A., 1953, § 78–3–5 (Supp.1981).

The judgment of the trial court is reversed and the case is remanded for a new trial in accordance with this opinion.

OAKS and HOWE, JJ., concur.

STEWART, J., concurs in the result.

HALL, Chief Justice (concurring and dissenting):

I join the Court in upholding the constitutionality of the challenged statutes and ordinances. However, I do not agree that defendant is entitled to a new trial.

In granting a new trial, the majority of the Court reaches out and decides an issue not raised at trial nor raised on appeal. With the exception of the unmeritorious identification issue, defendant's contentions on appeal are directed solely to the constitutionality of U.C.A., 1953, § 41–6–44.3, which permits the introduction of documentary evidence of acts, conditions or events to prove the accuracy of the instrument commonly referred to as the "breathalyzer." Defendant attacks the statute on the grounds that it denies the rights of confrontation and equal protection.

Defendant has never contended that the documentary evidence failed to meet the foundational requirements of the statute, or that the trial court failed to make the findings required by the statute before receiving the evidence bearing upon the accuracy of the "breathalyzer." No such issue having been raised at trial, and no issue pertaining thereto having been raised on this appeal, I do not agree with the majority of the Court that "the record is devoid of any such findings." On the contrary, it is implicit in the record before us that the trial judge made such findings and thereby satisfied himself that the proper foundation had

been laid for the introduction of the breathalyzer evidence. Furthermore, it was not incumbent upon the court, by statute or otherwise, to make written findings, and even if he did not vocalize his findings in support of his decision to admit the evidence, it *was* incumbent upon the defendant to take exception thereto, if for no other reason than to dispel any notion of invited error.

I am also unable to follow the reasoning of the majority that the affidavits proffered in evidence were inadmissible since they were not made from the standpoint of personal knowledge. My reading of the affidavits reveals that they were executed by the three Highway Patrol troopers who performed the testing of the breathalyzer for accuracy and that they were executed in their capacity as "Breath test technicians." If they did not personally perform the testing, their affidavits at least support the fact that they personally observed the performance of the tests by others. In any event, the sufficiency of the affidavits not having been challenged in the trial court, that issue is not before the Court.[1]

In regard to the assertion of the majority that § 41–6–44.3 requires documentary evidence to be prepared contemporaneously with the testing of the "breathalyzer," I find no such provision therein. What is required by the statute is set forth in subsections (2) and (3), which read as follows:

(2) In any action or proceeding in which it is material to prove that a person was driving or in actual physical control of a vehicle while under the influence of alcohol or driving with a blood alcohol content of .10% or greater, documents offered as memoranda or records of acts, conditions or events to prove that the analysis and accuracy of the instrument were made pursuant to standards established in subsection (1) shall be admissible if:

(a) The judge finds that they were made in the regular course of the investigation *at or about the time of the act, condition or event;* and

(b) *The source of the information from which made and the method and circumstances of their preparation were such as to indicate their trustworthiness.*

(3) If the judge finds that the standards established under subsection (1) and the provisions of subsection (2) have been met, there shall be a presumption that the test results are valid and *further foundation for introduction of evidence is unnecessary.* [Emphasis added.]

I would affirm the judgment of the trial court in its entirety.

---

1. *Franklin Financial v. Ponderosa Associates,* et al., Utah, 659 P.2d 1040 (1983).